In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by ROBERT E. DINEEN, as Superintendent of Insurance of the State of New York, Petitioner. SUPREME OR COSMOPOLITAN COUNCIL OF THE BROTHERHOOD OF THE COMMONWEALTH, Respondent.

Supreme Court, Special Term, Queens County, January 10, 1949.

*Nathaniel L. Goldstein, Attorney-General (Samuel Hirshowitz* of counsel), and *Alfred C. Bennett* for petitioner.

*Robert H. Haskell* for respondent.

UGHETTA, J. This is an application for an order of liquidation of respondent, the Supreme or Cosmopolitan Council of the Brotherhood of the Commonwealth, also known as Brotherhood of the Commonwealth.

The petition of the Superintendent of Insurance of the State of New York alleges that the respondent is a fraternal benefit society organized under the Benevolent Orders Law of the State of New York by filing a certificate of election of trustees with

the Secretary of State on July 15, 1910. The purposes of the respondent, as stated in its revised constitution, are twofold: first, " To promote the perfecting and realization of a truly democratic civil polity * * * ", and, second, " By means of the Mutual Assurance against destitution embodied in a Life-Annuity System, described and provided for herein, to secure and bestow substantial benefits upon each of its members, through the establishment of the said Life-Annuity System, as are entitled to participate in the Benefit Fund of said Life-Annuity System, by affording such members an opportunity, at their option, to share in the Annual Income of said fund according to their respective bases or interests in said Benefit Fund, in accordance with and subject to the provisions of Article III, hereof with reference thereto." The constitution also provides that each member of the organization must make an annual payment of " dues " in the amount of $10 (art. II, § 1). More may be contributed if desired. Ten dollars of the first year's dues are deposited in a " dividend fund " and used for the purpose of enrolling new members (art. III, § 1). The balance and all subsequent contributions are deposited in a " benefit fund " (art. III, § 2). The latter fund is invested in income producing properties by the officers of the brotherhood and the earnings therefrom are annually deposited in the dividend fund, from which all expenses of the organization are paid (art. III, § 2; art. VIII, § 5). The annual net earnings are available for dividend declarations. In this respect sections 2 and 3 of article III of the constitution states:

" Sec. 2. On the 30th day of November in each calendar year, the entire net income of said year of the Benefit Fund shall be paid into the Dividend Fund and the Executive Committee shall declare a dividend in such sums as it deems fit, except that the total of the dividend declared shall not exceed the total sum in the Dividend Fund and the dividend so declared shall be paid to the living members who shall have paid their Annual Benefit Dues for such year, in proportion to their Basis of Participation determined as hereinafter specified.

" Sec. 3. Each member's ' Basis of Participation ' in the Dividend Fund, and in the Increment, shall be the total amount of Annual Benefit Dues paid in plus the amount of Increment theretofore credited to him or her under the provisions of Sec. 1 of this Article."

The constitution also provides that each member when he joins is to be placed in a " birth year class " with other members

born in the same calendar year. When a member of one of these classes dies, resigns or his interest lapses by reason of non-payment of dues for three consecutive years, the amount held in the benefit fund for his account is prorated to the credit of the remaining members in the same class, thereby increasing their share of the subsequent annual income distributions. When the last member of a year class dies, resigns or his interest otherwise terminates, the class is closed and the total principal fund credited to that class remains in the benefit fund.

It is petitioner's contention that the respondent is conducting an insurance business without a license, in violation of subdivision 1 of section 40 of the Insurance Law. That section reads: " § 40. *Insurer's license required; issuance, revocation of license.* 1. No person, firm, association, corporation or joint-stock company shall do an insurance business in this state unless authorized so to do by a license issued and in force pursuant to the provisions of this chapter, or unless exempted by the provisions of this chapter from the requirement of having a license to do business." Respondent admits that it is not licensed in accordance with the above provision but contends, on the other hand, that it is not conducting an insurance business as the same is defined in the Insurance Law.

The definition contained in section 4 of the Insurance Law states that " ' doing an insurance business ' has the meaning assigned to it by section forty-one " of that law. Subdivision 3 of section 41 defines " doing an insurance business " as including " * * * (a) the making, as insurer, or proposing to make as insurer, of any insurance contract, and * * * (c) the doing of any kind of business * * * specifically recognized as constituting the doing of an insurance business within the meaning of this chapter and (d) the doing or proposing to do any business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of this chapter." In specifying the kinds of insurance which are authorized in this State and which are subject to the requirements contained in article IV of the Insurance Law, section 46 provides for annuities among other types of insurance. Subdivision 2 of section 46 reads: " ' Annuities,' meaning all agreements to make periodical payments where the making or continuance of all or of some of a series of such payments, or the amount of any such payment, is dependent upon the continuance of human life, except payments made under the authority of paragraph one."

The foregoing provisions clearly indicate that the selling of annuities is sufficient to constitute " doing an insurance business " as the same is meant by the Insurance Law. This view also finds support in the definition of a life insurance company, found in section 190. There it is provided: " 1. The term ' life insurance company ', as used in this chapter, shall mean any corporation having power to do either one or both of the kinds of insurance business specified in paragraphs one and two of section forty-six."

The court is also of the opinion that respondent's "Life-Annuity System " comes within the meaning of " annuities " as quoted above. Respondent's constitution, as pointed out, states specifically that the respondent agrees to make what in effect are periodical payments to the members consisting of annual dividends, and it also appears that the same are dependent upon the continuance of the lives of the members. The court agrees with the Attorney-General's statement that " The words ' periodical payments ' do not necessarily entail only fixed sums payable on specified dates. The annual division and distribution of the Dividend Fund above described would seem to be properly so designated. Certainly the ' making or continuance of * * * such payments * * * is dependent upon the continuance of human life.' " In such respect it is to be observed that when a member dies, his account is not distributed to his heirs or beneficiaries but rather is prorated among the remaining members of his " birth year class " of the respondent organization.

From the foregoing, it seems clear that the respondent is " doing an insurance business " without a license in violation of law and, consequently, an order of liquidation should issue pursuant to sections 511 and 513 of the Insurance Law. Petitioner's application is granted. Submit order.